UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
KUO R. CHIANG,                                    :
                                                  :        **ECF CASE**
                             Plaintiff,           :
                                                  :
                   v.                             :        09 Civ. 3794 (JCF)
                                                  :
JOHN E. POTTER, Postmaster General of the         :
United States Postal Service,                     :
                                                  :
                             Defendant.           :
------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE CERTAIN EVIDENCE AND FOR A JUDICIAL DETERMINATION OF
LOST WAGES WITH RESPECT TO PLAINTIFF'S TITLE VII CLAIMS**

PREET BHARARA
United States Attorney for the
Southern District of New York
*Attorney for Defendant*
86 Chambers Street, Third Floor
New York, New York  10007
Telephone: (212) 637-2718, 2698
Facsimile: (212) 637-2786
Email: david.bober@usdoj.gov
            jeffrey.oestericher@usdoj.gov


DAVID BOBER
JEFFREY S. OESTERICHER
Assistant United States Attorneys
    - Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Legal Standards Governing Motions *In Limine* . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Chiang Should Be Precluded from Introducing Evidence Regarding His Claim of
           Racial Discrimination Because He Has Not Exhausted That Claim . . . . . . . . . . 4

    C.    Evidence Regarding the Graffiti Should Also Be Precluded Because
           the Incident Was Not Sufficiently Severe to Establish a *Prima Facie*
           Case of Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    The Court Should Exclude Evidence Regarding Backpay . . . . . . . . . . . . . . . . 11

    E.    Lay Testimony Regarding Plaintiff's Mental Condition Should Be Excluded . . 12

Defendant John E. Potter, Postmaster General of the United States (the "Postal Service" or the "Government"), respectfully submits this memorandum of law in support of his motion *in limine* for an order excluding certain evidence in support of plaintiff's claims of discrimination and retaliation, and directing that any equitable remedies with respect to plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), be calculated by the Court, and not by the jury.

## PRELIMINARY STATEMENT

Plaintiff Kuo R. Chiang, a mail truck driver, alleges that he was subjected to unlawful retaliation beginning in April 2007 after he filed a race discrimination complaint with the Postal Service's Equal Employment Opportunity Office in November 2006. *See* Amended Complaint ¶¶ 14-15. In that administrative complaint, which was dismissed in April 2007, Chiang alleged that he was subjected to racial discrimination when one of his supervisors, William Ventrello, "singled [him] out" and blamed him for a complaint that the Postal Service had received from a customer on Chiang's route. *See id.* ¶ 12 (alteration added). Chiang then filed a second EEO complaint in May 2007, alleging that he had been subjected to retaliation for filing the November 2006 complaint when, on two dates, April 28, 2007, and May 4, 2007, his supervisors changed his schedule and allegedly denied him overtime. *See* Amended Complaint ¶ 47; July 6, 2010, Declaration of David Bober Exhibit A ("Bober Declaration") (Chiang's May 29, 2007, formal EEO complaint). Chiang subsequently amended his May 2007 EEO complaint to add a number of additional alleged retaliatory actions, including that (1) he was assigned to deliver express mail on certain Saturdays (rather than driving his regular route), (2) he was denied overtime on certain discrete dates in the summer of 2007, (3) he was given a letter of warning on May 21, 2007, for failure to follow instructions, and (4) his status on the overtime desired list

was changed in August 2007.  *See* Amended Complaint ¶¶ 26, 42, 45.  The May 2007 EEO

complaint was dismissed by the EEOC in February 2009, *see* Amended Complaint ¶ 67, and

Chiang instituted this action within 90 days of that dismissal.  *Id.* ¶ 69.

In his amended complaint before this Court, Chiang again alleges that soon after the first

EEO complaint was dismissed in April 2007 he "was subjected to a pattern of harassment and

retaliatory conduct."  Amended Complaint ¶ 16.  Specifically, Chiang re-asserts the alleged

retaliatory acts mentioned above,[1] plus he adds new allegations, including:  (1) In April 2008 he

was prevented from using a door that leads to the post office lobby, *id.* ¶ 48, (2) in September

2008, Mildred Brown, one of Chiang's supervisors, "falsely claimed" at an employee meeting

that Chiang "had informed an inspector for the United Postal Service that some employees

would sometimes leave work early," *id.* ¶ 51, and he was subsequently subjected to "being called

names, expletives, and other harassing conduct" after Ms. Brown's false accusations, *id.* ¶ 53, (3)

his supervisors "began to force other workers to give [Chiang] their parking spot as a means of

cutting [Chiang's] overtime, *id.* ¶ 55, and (4) beginning in December 2008 and continuing into

2009, graffiti was written about him in the Post Office bathrooms and elevator, including

"Chiang is an a**hole," "Chiang is a rat," and "Chiang sucks c**k," *id.* ¶¶ 57-66.

Although Chiang's EEO complaints consistently alleged only that he was subjected to

retaliation and never made mention of racial discrimination, Chiang's amended complaint in this

---

[1] *See* Amended Complaint ¶ 20 (Chiang was assigned "to a route different then [sic] his regular one" in April 2007); ¶¶ 28-29, 34-35 (he was "disciplined under false pretenses and denied the right to overtime" on various days in April, May, and June 2007); ¶¶ 37-41 (he began to receive less overtime generally beginning in August 2007); ¶¶ 42-44 (he was required to deliver Express Mail on certain Saturdays in June, July, and August 2007, which was not part of his regular job duties).

case contains, in addition to the claim of retaliation, a cause of action for racial discrimination. *See* Amended Complaint ¶¶ 72-73 (under heading "First Claim," alleging that "Defendants have engaged in a pattern of race discrimination," and "Defendants have engaged in a pattern of discrimination on basis of national origin").  As further explained below, Chiang should be precluded from introducing evidence in support of any claim of discrimination based on race or national origin because he has not exhausted administrative remedies with respect to this claim. Although Chiang has filed no fewer than seven formal EEO complaints against the Postal Service since his initial complaint in November 2006, all seven complaints, including the May 2007 complaint at issue here, alleged only retaliation, and contained no allegations related to racial or national-origin discrimination.

In addition, evidence regarding the graffiti allegedly written about Chiang should be excluded because the circumstances surrounding the graffiti are not sufficiently adverse to sustain Chiang's burden of pleading a *prima facie* case of retaliation, and its introduction would be substantially more prejudicial than probative.

### A.   Legal Standards Governing Motions *In Limine*

"The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'"  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citations omitted).  *In limine* motions therefore serve the salutary goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance."  *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

The Court may rely on the Federal Rules of Evidence and its own broad discretion in

determining whether or not to exclude certain evidence at trial. *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir. 1976). Ordinarily, evidence is admissible so long as it is relevant, *see* Fed. R. Evid. 401-02, and not otherwise barred under the Federal Rules of Evidence. The proponent of the evidence, however, bears the burden of proving that is admissible. *Evans v. Port Auth. of N.Y. and N.J.*, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) ("The burden of establishing admissibility, of course, is with the proponent of the evidence.").

**B.      Chiang Should Be Precluded from Introducing Evidence Regarding His Claim of Racial Discrimination Because He Has Not Exhausted That Claim**

"Prior to bringing suit under . . . Title VII . . . a federal government employee must timely exhaust the administrative remedies at his disposal." *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001) (per curiam); *see also Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) ("Exhaustion is ordinarily an essential element of a Title VII claim."). To exhaust administrative remedies prior to bringing suit in federal district court, a federal employee must (1) consult with a counselor at the relevant agency's EEO Office within 45 days of the alleged discriminatory act, and, if the matter is not resolved after a mandatory counseling period, (2) file a formal written administrative complaint within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint. *Mathirampuzha v. Potter*, 548 F.3d 70, 74-75 (2d Cir. 2008). "The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision." *Id.* The Supreme Court has instructed that administrative exhaustion requirements should be followed strictly and not "disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984); *see also Nat'l R.R. Passenger Corp. v.*

4

*Morgan*, 536 U.S. 101, 108 (2002) ("In the context of a request to alter the timely filing requirements of Title VII, th[e Supreme] Court has stated that 'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'") (alteration added) (citation omitted); *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) ("[E]xhaustion of administrative remedies . . . 'stands as an essential element of Title VII's statutory scheme,' and one with which defendants are entitled to insist that plaintiffs comply.") (citation omitted).

Chiang's amended complaint in this matter references only two EEO complaints. The first is a November 2006 complaint in which Chiang complained that one of his supervisors, William Ventrello, unlawfully singled him out for criticism on the basis of his race (*see* Amended Complaint ¶ 14). The second, which forms the basis for this lawsuit, is a May 2007 complaint in which Chiang alleged that the Postal Service retaliated against him for filing the November 2006 complaint by (1) denying him overtime on certain dates, (2) requiring him to deliver Express Mail on certain Saturdays rather than work his regular route, and (3) changing his status on the overtime desired list. The May 2007 complaint required Chiang to specify "the type of discrimination [he was] alleging," and gave him the option to choose race, color, religion, national origin, sex, age, retaliation, and disability. Bober Declaration Exhibit A. Chiang checked the box for "retaliation," and only that box. *Id.* As an attachment to his May 2007 complaint, Chiang included a letter dated May 2, 2007, in which he explained the alleged circumstances supporting his claim of retaliation, and concluded by writing "under this situation I feel the (T.S.P.O.) Mr. William Ventrello is trying to set me up also I believe (T.S.P.O.) Mr. William Venrello was purposeful harassing me and in RETALIATION. *Id.* (errors and emphasis

5

in original).  That letter, in turn, had been included as an attachment to a form entitled

"Information for Pre-Complaint Counseling.  *Id.* Exhibit B.  That form asked Chiang "What

factor(s) of discrimination are you alleging?", and Chiang's written response was "IN

RETALIATION."  *Id.*  In a second attachment to the May 2007 complaint, Chiang again

explained the circumstances he alleged were retaliatory, and concluded with "under this situation

I feel (T.S.P.O.) Mr. William Ventrello was abuse power for Retaliation [sic]."  *Id.* Exhibit A.

The same question and answer – *i.e.*, "IN RETALIATION" – is repeated in additional

forms that Chiang signed on June 4 and June 11, 2007.  Bober Declaration Exhibits C & D.  In

another such form that Chiang signed on July 18, 2007, he again repeated that the Postal Service

was taking various actions against him "IN RETALIATION," and this time included a letter

dated July 14, 2007, indicating his belief that one of his supervisors "was purposeful [sic]

harassing me and in Retaliation."  *Id.* Exhibit E.  As a resolution, Chiang requested that "the

management never stops me doing my assignment again.  Also stop the harassment and

retaliation."  *Id.*

On August 12, 2007, Chiang again amended his complaint to add additional charges of

retaliatory conduct.  The three grievances that he added are as follows:

1.      Irrational change my permanent position for retaliation.

2.      Irrational stop me return truck back to F.D.R. station garage, cutting my overtime

pay for retaliation.

3.      Irrational change my overtime desired list status for retaliation.

Bober Declaration Exhibit F.  Likewise, in subsequent EEO complaints filed in December 2007,

February 2008, May 2008, June 2008, October 2008, and March 2009 Chiang every time

6

checked the box for "retaliation," Bober Declaration Exhibits G, H, I, J, K, L, and made no mention of racial or national-origin discrimination.

In short, although Chiang has certainly put the Postal Service on ample notice of his retaliation claim, he has never once complained of racial discrimination apart from his initial complaint in November 2006, which he did not pursue after it was dismissed. Accordingly, he has not exhausted his claims of racial and national-origin discrimination, and should be precluded from presenting them to the jury. *See, e.g.*, *Belgrave*, 254 F.3d at 386.

Chiang may attempt to argue that the jury should be permitted to hear evidence related to racial or national-origin discrimination because the discrimination claims are "reasonably related" to the allegations in his administrative complaints. *See Butts v. City of N.Y. Hous. Preserv. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993). The Court should reject any such attempt. Under the "reasonably related" doctrine, the exhaustion requirement is relaxed if "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mathirampuzha*, 548 F.3d at 76. In determining whether claims are reasonably related, "the focus should be on the factual allegations made in the [EEO] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Id.* The central question is whether the complaint filed with the EEOC gave that agency "adequate notice to investigate discrimination on both bases." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003).

However, the "reasonably related" doctrine does not typically suffice to bridge the gap between claims of retaliation and claims of racial discrimination. As the Second Circuit has explained, "retaliation and discrimination represent very different theories of liability."

7

*Williams*, 458 F.3d at 71.  Therefore, "generally, claims based on a wholly different type of discrimination than initially asserted in the EEO charge will not be permitted to be brought in federal court." *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998); *see also Williams*, 458 F.3d at 70 (citing cases where district courts considered but rejected the argument that charge of race or gender discrimination was "reasonably related" to an EEOC complaint alleging only retaliation).  The Circuit has explained there is no "per se rule" regarding whether a retaliation claim in an EEOC complaint will be deemed reasonably related to a discrimination claim.  *Williams*, 458 F.3d at 71.  Rather, the inquiry is whether the claim presented in the EEO retaliation charge presented the "factual underpinnings" of the racial discrimination claim.  In *Williams*, therefore, the Circuit held that it was error for the district court to have dismissed the gender discrimination claim because the EEO charge – although asserting only a retaliation claim – contained allegations that put the agency on notice of a potential gender discrimination claim; *i.e.*, the plaintiff alleged in the administrative proceedings that "an alleged sexual harasser had been reinstalled as her boss; she was the only woman in her station; she had previously alleged gender discrimination in state court; she was given an impossible assignment never given to men, and she was deprived of private changing facilities and given no option but to change in the boiler room with her male co-workers."  458 F.3d at 71.

This is simply not the case here.  In the one EEO filing (from May 2007) that has been exhausted and is the subject of this lawsuit, Chiang alleged that he was subjected to several instances of retaliation in the spring and summer of 2007 – namely, schedule changes on April 28 and May 4, 2007; express mail delivery on Saturdays in summer 2007; a letter of warning on May 21, 2007; and that his overtime was cut during summer 2007.  His subsequent EEO filings

likewise complained of discrete denials of overtime, or individual instances of retaliation by a single supervisor or co-worker. In each case, Chiang was very specific that he was asserting a claim of retaliation. There are no descriptions of racial harassment or racial discrimination and, in fact, no mention of race at all. Simply put, these allegations could not reasonably have been expected "to blossom into an investigation covering allegations of unrelated misconduct," *Mathirampuzha*, 548 F.3d at 76, such as racial discrimination. *See Dennis v. United Parcel Serv., Inc.*, 07 Civ. 9754 (HB), 2008 WL 4945634, at *4 (S.D.N.Y. Nov. 20, 2008) (race and national origin claim not reasonably related to retaliation claim); *Little v. NBC, Inc.*, 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002) (race discrimination claim not reasonably related to retaliation claim); *Walsh v. Nat'l Westminster Bancorp. Inc.*, 921 F. Supp. 168, 172 (S.D.N.Y. 1995) (same regarding claim of sexual harassment). Accordingly, Chiang should be precluded from introducing evidence related to his first cause of action.

### C. Evidence Regarding the Graffiti Should Also Be Precluded Because the Incident Was Not Sufficiently Severe to Establish a *Prima Facie* Case of Retaliation

Evidence relating to the graffiti should also be excluded because the graffiti incidents are not sufficiently adverse to establish a *prima facie* case of retaliation. To establish a *prima facie* case of retaliation, a plaintiff must show (1) that he participated in an activity protected by Title VII, (2) that his participation was known to his employer, (3) that his employer thereafter subjected him to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action. *Kaytor v. Electric Boat Corp.*, __ F.3d __, 2010 WL 2593500, at *15 (2d Cir. June 29, 2010). In the context of a claim of retaliation, an employment action is "materially adverse" if "it well might

have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Kessler v. Westchester County Dep't of Social Servs.*, 461 F.3d 199, 207 (2d Cir. 2006).  "There

are no bright-line rules" with respect to what constitutes adverse employment action for purposes

of a retaliation claim, and therefore courts must pore over each case to determine whether the

challenged employment action reaches the level of "adverse."  *Fincher v. Depository Trust &*

*Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010).

      Applying this standard, the allegations regarding the graffiti fail to establish a *prima facie*

case of retaliation.  Chiang does not know who wrote the graffiti, *see* Bober Declaration Exhibit

M (Chiang deposition testimony regarding the graffiti), and there is no evidence that the graffiti

was written by, or at the request of, any supervisor.  Chiang also admits that some of the graffiti

was removed.  *See* Amended Complaint ¶ 59.  Thus, his retaliation claim can be described, at

best, as a claim that management retaliated against him by not taking sufficient steps to paint

over the graffiti as quickly as Chiang would have liked.

      The Second Circuit has held that similar instances of alleged retaliatory misconduct are

not sufficient to establish a *prima facie* case of retaliation.  In *Fincher*, for example, the Circuit

ruled that a plaintiff who alleged that her employer had not conducted an investigation of her

claims of racial discrimination had not sufficiently alleged an adverse action.  604 F.3d at 721.

The Court explained that "affirmative efforts to punish a complaining employee are at the heart

of any retaliation claim," and therefore an employee who complained about a lack of action –

*i.e.*, a lack of investigation of her discrimination complaints – "cannot be said to have thereby

suffered a punishment."  *Id.*

      Because Chiang suffered no adverse action as a result of any alleged failure to remove

graffiti, evidence relating to the graffiti should be excluded.  This is especially true because the at most minimal probative value of the graffiti allegations is substantially outweighed by the undue prejudice that defendant would suffer were the jury to see the evidence.  The trial court has considerable discretion in determining whether to admit or exclude evidence, *see, e.g.*, *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir. 1997), and to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion, or by its cumulative nature, *see* Fed. R. Evid. 403.  Here, evidence regarding the graffiti that first appeared years after Chiang first engaged in protected activity has little, if any, relevance to whether the Postal Service wrongfully retaliated against Chiang in the summer of 2007, and the inflammatory nature of the graffiti carries a substantial risk of unfairly prejudicing the jury. Accordingly, evidence regarding the graffiti should also be excluded under Federal Rule of Evidence 403.

### D.  The Court Should Exclude Evidence Regarding Backpay

The Court should preclude any testimony or evidence offered during the trial regarding plaintiff's claims, if any, for backpay.  These are equitable matters for the Court, not the jury, to decide and should be reserved unless and until there is a liability determination.  Plaintiff's right to a jury trial under Title VII is limited to the appropriateness of "compensatory damages," 42 U.S.C. § 1981a(c), which, by statute, "shall not include backpay," 42 U.S.C. § 1981a(b)(2). Accordingly, courts in this Circuit have routinely held that backpay is to be determined by the court, not by the jury.  *See, e.g.*, *Gilbert v. Hotline Delivery*, No. 00 Civ. 0160 (MBM), 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2001) ("The choice of whether to award backpay is left to the equitable discretion of the district court.  Once a plaintiff has been deemed eligible for the

remedy, the method of assessing backpay is also a matter for the court's discretion."); *Zerilli v. New York City Transit Auth.*, 973 F. Supp. 311, 314 n.1 (E.D.N.Y. 1997) (backpay award under Title VII is for court to decide, where backpay awards are expressly excluded from ambit of "compensatory damages" pursuant to 42 U.S.C. §§ 1981a(a)(1), (b)(2) and (c)(1)), *aff'd in part, rev'd in part on other grounds*, 162 F.3d 1149 (2d Cir. 1998). The Court should therefore preclude plaintiff from introducing any evidence before the jury regarding backpay.

### E.     Lay Testimony Regarding Plaintiff's Mental Condition Should Be Excluded

The Court should also preclude plaintiff from eliciting testimony from lay witnesses regarding his mental condition. Federal Rule of Evidence 701(c) explicitly bars the admission of lay opinions that are "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). *Williams v. Muhammad's Holy Temple of Islam, Inc.*, No. 00 Civ. 1251 (RML), 2006 WL 297448, at *2 (E.D.N.Y. Feb. 8, 2006) (prohibiting lay opinion of mental state, stating that "[t]he witness may describe what she observed, but may not provide an opinion regarding plaintiff's mental state"). Testimony by lay people about plaintiff's mental condition, as well as the cause and severity of the condition, is clearly the type of testimony barred by Rule 701(c). Accordingly, plaintiff should be precluded from offering any such testimony.

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:    /s/                                
DAVID BOBER
JEFFREY S. OESTERICHER
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY  10007
(212) 637-2718/2698
david.bober@usdoj.gov
jeffrey.oestericher@usdoj.gov

To:    Wong, Wong & Associates P.C.
        Attorneys for plaintiff
        150 Broadway, Suite 1588
        New York, NY 10038

13