UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KUO R. CHIANG,

                              Plaintiff,                    ECF CASE

           -against-                           Case No.: 09-CIV-3794 (JCF)

JOHN E. POTTER, POSTMASTER GENERAL OF
THE UNITED STATES POSTAL SERVICE,

                             Defendant.
------------------------------------------------------------------X


**PLAINTIFF'S AMENDED MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE
AND FOR A JUDICIAL DETERMINATION OF LOST WAGES
WITH RESPECT TO PLAINTIFF'S TITLE VII CLAIMS**


Jonathan T. Trexler
WONG, WONG & ASSOCIATES, P.C.
*Attorneys for Plaintiff*
150 Broadway, Suite 1588
New York, NY 10038
Telephone: (212) 566-8080
Facsimile: (212) 566-8960
Email: jtrexler@wongwonglaw.com

TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................3

FACTUAL BACKGROUND.....................................................................................4

    I.     PLAINTIFF'S CLAIM OF RACE AND NATIONAL
          ORIGIN DISCRIMINATION...................................................................4

    II.    DEFENDANT'S DECISION NOT TO REMOVE
          HATEFUL GRAFFITI...............................................................................7

    III.   DEFENDANT'S DENIAL OF OVERTIME
          OPPORTUNITIES TO PLAINTIFF..........................................................8

    IV.   LAY TESTIMONY CONCERNING PLAINTIFF'S
          EMOTIONAL DISTRESS..........................................................................8

DISCUSSION.............................................................................................................9

    I.     DEFENDANT'S MOTION FOR PARTIAL SUMMARY
          JUDGMENT BASED ON EXHAUSTION SHOULD BE
          DENIED....................................................................................................10

          A.    DEFENDANT WAIVED ITS EXHAUSTION
                  DEFENSE...................................................................................10

          B.    PLAINTIFF CAN INTRODUCE ADDITIONAL
                  EVIDENCE OF RETALIATION...............................................12

    II.    DEFENDANT'S REQUEST TO EXCLUDE EVIDENCE
          OF GRAFFITI SHOULD BE DENIED.....................................................13

          A.    PRIMA FACIE CASE..................................................................13

          B.    EVIDENCE OF INTENT TO RETALIATE................................14

    III.   DEFENDANT'S REQUEST TO EXCLUDE EVIDENCE
          CONCERNING BACKPAY SHOULD BE DENIED................................15

    IV.   DEFENDANT'S REQUEST TO EXCLUDE EVIDENCE
          OF PLAINTIFF'S EMOTIONAL CONDITION
          SHOULD BE RESERVED FOR TRIAL....................................................16

CONCLUSION..........................................................................................................17

## PRELIMINARY STATEMENT

Defendant seeks partial summary judgment[1] of Plaintiff's claim of race and national origin discrimination based upon a failure to exhaust administrative remedies. This request for relief is foreclosed by the parties' unambiguous stipulation and the Court's order. For example, the Joint Pretrial Order provides that "Plaintiff's Title VII claims for (i) race discrimination and (ii) retaliation shall be tried to a jury." Defendant cannot now resurrect its abandoned exhaustion defense, even if it was once viable.[2] Moreover, Defendant cannot argue that it would be inequitable for the Court to find that Defendant waived its exhaustion defense, as Defendant has conducted extensive discovery concerning race and national origin discrimination, both parties' proposed jury instructions specifically address that claim, and the parties will be fully prepared to try that claim on August 16, 2010.

Defendant also argues that the jury should not hear about Defendant's systematic efforts to provide fewer overtime opportunities to Plaintiff than to his fellow mail carriers, and the financial impact of those efforts. This evidence is crucial to establishing the threshold question of liability for race discrimination and/or retaliation, but Defendant makes a request to exclude it simply because the Court will make the final computation of damages for backpay. Defendant's series of disingenuous excuses for denying overtime opportunities to Plaintiff has also been a major source of frustration to Plaintiff and bears on Plaintiff's request for damages for emotional distress.

---

[1] Prior to the pretrial conference held in this matter on July 9, 2010, Plaintiff filed a memorandum in opposition to Defendant's motion. In that memorandum, Plaintiff argued that Plaintiff did not have adequate time to respond to Defendant's exhaustion argument. However, in the pretrial conference, the Court allowed Plaintiff's counsel as much time as necessary to respond to Defendant's argument, and counsel agreed that July 16, 2010 was an acceptable deadline for opposition papers. Therefore, Plaintiff no longer argues that it lacked adequate time to prepare a response.

[2] As discussed, infra, Plaintiff did not specifically argue race and national origin discrimination in the EEOC proceedings immediately prior to this action, and Plaintiff does not argue that such claim is "reasonably related" to Plaintiff's retaliation claims addressed by the EEOC. Therefore, Plaintiff's argument herein, that the jury should decide the race and national origin discrimination, is based upon Defendant's waiver of its exhaustion defense.

Defendant seeks to exclude evidence that Defendant failed to cover hateful and offensive graffiti written about Plaintiff in the post office, even though Defendant's ordinary practice is to remove graffiti as soon as it is reported. Not only did Defendant's departure from ordinary practice constitute prima facie discrimination, but it also evidences a broader intent to treat Plaintiff like a second-class employee, manifested by so many other instances of unfair treatment of Plaintiff at work over the course of the past few years.

Finally, Defendant requests a ruling *in limine* concerning the admissibility of testimony from lay witnesses concerning Plaintiff's emotional condition, pursuant to Rule 701 of the Federal Rules of Evidence. Based upon the discussion of counsel and argument before the Court at the pretrial conference of July 9, 2010, it appears that all counsel understand the parameters of Rule 701 and Plaintiff's counsel does not plan to elicit testimony disallowed by that Rule. In view of the absence of any discernible disagreement on this issue, Plaintiff proposes that any ruling be reserved for trial (assuming that any ruling will be necessary at all).

## FACTUAL BACKGROUND

### I. PLAINTIFF'S CLAIM OF RACE AND NATIONAL ORIGIN DISCRIMINATION

Plaintiff is a mail carrier employed by the United States Postal Service and assigned to Gracie Station, located at 229 East 85th Street, New York, New York 10028. (See First Amended Complaint dated August 31, 2009 ("Compl.") ¶¶ 5, 9.) On November 27, 2006, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that Defendant had discriminated against Plaintiff on the basis of his race. (See id. ¶ 14.) That complaint was dismissed on April 20, 2007. (See id. ¶ 15.)

Immediately following said dismissal, Plaintiff was subjected to continuous discriminatory treatment by the management of the postal service, including but not limited to


unfounded disciplinary actions, the systematic denial of overtime opportunities, and various measures calculated to subject Plaintiff to isolation and scorn from his fellow mail carriers. (See generally id. ¶¶ 16-66.) Plaintiff filed several EEO complaints concerning this discriminatory treatment, and listed "retaliation" as the basis for those complaints. (See Declaration of David Bober dated July 6, 2010 ("Bober Decl.") ¶¶ 2-14, Exhibits A-M.) Although those complaints include certain references to the race of similarly situated employees, they did not specifically allege discrimination based upon race or national origin. (See id. ¶ 7, Exhibit F (noting that similarly situated carriers, Carlos Medina and Charles Davis, were "Black" and "Hispanic," respectively).) On February 4, 2009, Plaintiff's EEOC complaints were dismissed by order of the EEOC, and on February 13, 2009, Plaintiff was given a "right to sue letter," allowing him ninety (90) days to file this civil action. (See Compl. ¶¶ 67-68.)

A Summons was issued in this action on April 15, 2009. (See Summons dated April 15, 2009.) In his Complaint, and subsequently in his First Amended Complaint, Plaintiff alleged that Defendant's discriminatory actions following dismissal of his first EEOC proceedings were motivated both by retaliation and by race and national origin. (See Compl. ¶¶ 71-77; Complaint dated April 7, 2009 ¶¶ 53-58.) Defendant's Answer and subsequent Answer to First Amended Complaint included the affirmative defense that "Plaintiff is barred from claiming race and national origin discrimination because he failed to raise these grounds in the complaint he filed with the Equal Employment Opportunity Commission." (See Answer dated August 5, 2009 at 7; Answer to First Amended Complaint dated September 30, 2009 at 7.) From the beginning of this action, Defendant had notice that Plaintiff was claiming that race or national origin was at least a motivating factor in Defendant's unlawfully discriminatory conduct. (See id.)

The parties engaged in substantial discovery in this matter, which covered issues relating to discrimination based both on retaliation and race and national origin. (See Amended Declaration of Jonathan T. Trexler dated July 16, 2010 ("JTrexler Decl.") ¶ 4.) Specifically, in Plaintiff's deposition on March 30, 2010, Defendant's counsel exhaustively questioned Plaintiff about Plaintiff's allegations of race and national origin discrimination. (See id. ¶ 5, Exhibit A (illustrating various questions posed to Plaintiff concerning his basis for alleging race and national origin discrimination).)

Defendant did not file any summary judgment motion on or before the deadline set by the Court for the submission of the pretrial order. (See Order dated March 29, 2010 ¶ 2.) The parties submitted a Joint Pretrial Order on June 14, 2010, which was signed by the Court on June 16, 2010. (See Joint Pretrial Order dated June 16, 2010.) The Joint Pretrial Order clearly contemplates that the issue of race and national origin discrimination will be tried to the jury. In Part IV, entitled "Summaries of Claims and Defenses," Plaintiff claims to have been "subject to a series of unlawful employment practices . . . in the form of racial discrimination and retaliation," and Defendant responds that "none of the actions described in the complaint constituted (i) unlawful discrimination on the basis of race or color . . . ." (See id. at 2.) Part V of the Joint Pretrial Order specifies that Plaintiff seeks "[i]njunctive relief prohibiting Defendant and its agents from engaging in future acts of racial discrimination or retaliation against Plaintiff." (See id. at 3.) Finally, in Part VI, the parties unequivocally submit that "Plaintiff's Title VII claims for (i) race discrimination and (ii) retaliation shall be tried to a jury." (See id.) Defendant did not make any exceptions, reservation of rights, or other basis for changing its position on the stipulated issues for trial. (See id.)

Subsequent to the issuance of the Joint Pretrial Order, the Court ordered the parties to "submit proposed voir dire questions, requested jury instructions, and any motions in limine by July 6, 2010." (See Order dated June 22, 2010 ¶ 1.) Both parties filed proposed jury instructions on July 6, 2010, and both parties included proposed instructions on Plaintiff's claim of discrimination based on race and national origin. (See Defendant's Requests to Charge dated July 6, 2010 at 34; Plaintiff's Proposed Jury Instructions dated July 6, 2010 at 6-12.)

Notwithstanding all the foregoing, by motion dated July 6, 2010, Defendant moved the Court that "Chiang should be precluded from introducing evidence related to his first cause of action [for racial discrimination]," on the grounds that Plaintiff had not specifically argued to the EEOC that race or national origin had been a motivating factor for Defendant's unlawful discrimination against Plaintiff. (See Memorandum of Law in Support of Defendant's Motion in Limine to Exclude Certain Evidence and for a Judicial Determination of Lost Wages with Respect to Plaintiff's Title VII Claims dated July 6, 2010 at 9.)

## II. DEFENDANT'S DECISION NOT TO REMOVE HATEFUL GRAFFITI

Ladonna Hutchins, a former assistant supervisor at Gracie Station, testified in her deposition that word of Plaintiff's EEO activities spread to everyone at Gracie Station. (See JTrexler Decl. ¶ 6, Exhibit B.) After word spread that Plaintiff had filed an EEO complaint, Plaintiff noticed the appearance of vile and hateful graffiti in the bathroom and the elevator at the station. (See Compl. ¶¶ 57-59.) Plaintiff testified that Plaintiff asked his supervisors to cover the graffiti. (See JTrexler Decl. ¶ 8, Exhibit C.) The former Tour Superintendent of Postal Operations at Gracie Station, William Ventrello, testified that it is regular practice to paint over graffiti when it appears at Gracie Station. (See id. ¶ 9, Exhibit D.) According to Plaintiff, although the first instance of graffiti was removed, the second instance was not removed upon

request, and remained in place even until Plaintiff's deposition was taken on March 30, 2010. (See id. ¶¶ 8, 10, Exhibit C.)

Plaintiff intends to introduce evidence at trial that Defendant departed from its established policy of removing graffiti at Gracie Station. (See id.) Such evidence is intended to demonstrate not only actionable discrimination in and of itself, but also discriminatory intent manifested in various other ways. (See id. ¶ 10; Compl. ¶¶ 11-66.)

### III. DEFENDANT'S DENIAL OF OVERTIME OPPORTUNITIES TO PLAINTIFF

Plaintiff intends to introduce evidence at trial that Defendant has systematically attempted to reduce Plaintiff's overtime opportunities as compared to other drivers desiring overtime at Gracie Station, and that this has resulted in substantial economic losses to Plaintiff. (See Compl. 28-41; JTrexler Decl. ¶ 11.) This evidence is not only relevant for purposes of determining the amount of backpay to be awarded (damages), but also to establish that Defendant intended to discriminate against Plaintiff, and that Plaintiff was thereby subjected to materially adverse employment action (liability). (See id.) Defendant's attempts to give fewer overtime opportunities to Plaintiff than to other drivers at Gracie Station is the most compelling and consequential part of Plaintiff's grievance, and without it, the jury would be left with a grossly inadequate and distorted view of the unfair treatment Plaintiff has experienced in his employment.

### IV. LAY TESTIMONY CONCERNING PLAINTIFF'S EMOTIONAL DISTRESS

Plaintiff intends to offer evidence at trial from various sources to support his claim of damages for emotional distress stemming from Defendant's unlawfully discriminatory conduct. (See id. ¶ 12.) These include: (1) testimony of Plaintiff's doctor, and related medical records, showing that Plaintiff has suffered from a serious medical condition due to his treatment at work,

and has suffered side effects from the drugs used to combat it, which together include high blood pressure, sleeplessness, severe headaches, extreme anxiety, and sexual dysfunction; (2) testimony from Plaintiff himself with respect to his recollection of these experiences and their impact on his emotional state; and (3) testimony from other lay witnesses, including other carriers, that Plaintiff has shown visible signs of anxiety after being treated unfairly by management at the postal service. (See id.)

After the pretrial conference held on July 9, 2010, it does not appear that Defendant has any objection to the foregoing evidence. Plaintiff's counsel indicated that Plaintiff does not intend for lay witnesses to offer any medical diagnosis of Plaintiff's condition, and Defendant's counsel stated that he does not object to lay witnesses testifying about facts they actually observed. Based upon the foregoing, and upon the assumption that counsel for both parties understand the scope and limitations of Rule 701 of the Federal Rules of Evidence, Plaintiff believes that it is unnecessary for the Court to issue an *in limine* ruling on this matter, and any questions as to the admissibility of evidence concerning Plaintiff's emotion condition can be reserved for trial.

## DISCUSSION

The purpose of a motion *in limine* is to enable the Court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. See Luce v. United States, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir.1996); TVT Records v. Island Def Jams Music Group, 250 F.Supp.2d 341, 344 (S.D.N.Y. 2003). However, it is common for Courts to reserve judgment on a motion *in limine* until trial so that the motion can be placed in the appropriate factual context. United States v. Chan, 184 F.Supp.2d 337, 340 (S.D.N.Y. 2002) (citations omitted). Indeed, many Courts have found that it

is the better practice to deal with questions of admissibility as they arise. See TVT Records, 250 F.Supp.2d at 344 (noting with dismay that the "parties seek to employ their *in limine* motions as preemptive weapons with which they endeavor to strike in shotgun fashion at whole topics and sources of prospective evidence" that may or may not ever be introduced as evidence at trial).

## I. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON EXHAUSTION SHOULD BE DENIED

### A. DEFENDANT WAIVED ITS EXHAUSTION DEFENSE

In the Joint Pretrial Order, Defendant unambiguously waived any objection to the submission of Plaintiff's race and national origin discrimination claim to the jury.

In 2007, the United States Supreme Court decided that a final pretrial order supersedes all prior pleadings and controls the subsequent course of the action. Rockwell Intern. Corp. v. U.S., 549 U.S. 457, 474, 127 S.Ct. 1397, 1409 (2007) (citing Fed. R. Civ. P. 16(e)). In Rockwell, the Supreme Court cited several other cases to support its decision. See id.; Curtis v. Loether, 415 U.S. 189, 190, n.1, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (holding that, where a claim was not included in the complaint, but was included in the pretrial order, "it is irrelevant that the pleadings were never formally amended" (citing Fed. R. Civ. P. 15(b), 16)). In particular, the Supreme Court cited Wilson v. Muckala with approval, in which the Tenth Circuit Court of Appeals found that defenses not included in a pretrial order are waived even if they appeared in the initial pleadings. 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint and, conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim").

Even before the Rockwell decision, Courts in the Second Circuit have followed the same position. Ismail v. Cohen, 706 F.Supp. 243, 249 (S.D.N.Y. 1989) ("Nowhere in defendants'

lengthy list of contested factual or legal issues is there any reference to the issue of notice. . . . The parties are bound to the issues raised in the pretrial order."); Fernandez v. United Fruit Co., 200 F.2d 414 (2d Cir. 1952), cert. denied, 345 U.S. 935, 73 S.Ct. 797, 97 L.Ed. 1363 (1953) ("If the plaintiff wished to present other issues at the trial he should have asked for an amendment of the pretrial order, which he failed to do."); Sun Oil Co. v. The S.S. Georgel, 245 F. Supp. 537 (S.D.N.Y. 1965), aff'd, 369 F.2d 406 (2d Cir. 1966). See also Neuspickle v. Knoxville, 48 F.R.D. 441 (E.D. Tenn. 1969) (holding that the defendant could not claim a lack of notice as an issue because it was not contained in the pretrial order).

Exhaustion of administrative remedies is not jurisdictional, and can be waived, either expressly or impliedly. Briones v. Runyon, 101 F.3d 287, 290 (2d Cir. 1996) ("[T]he statutory requirement [of timely administrative exhaustion] is analogous to a statute of limitations and is, therefore, considered subject to waiver, estoppel, and equitable tolling."); Boos v. Runyon, 201 F.3d 178, 182 (2d Cir. 2000) ("[T]he exhaustion requirement, while weighty, is not jurisdictional."); Belgrave v. Pena, 254 F.3d 384, 386-387 (2d Cir. 2001).

At this late juncture, allowing Defendant to revise the issues set forth in the Joint Pretrial Order would undermine the finality that such Order is intended to have and the certainty it is intended to provide the parties in the subsequent course of litigation (including the preparation of motions in limine, proposed jury instructions, voir dire, trial preparation, etc.). The parties have fully utilized discovery in anticipation of Plaintiff's race and national origin discrimination claim, and the jury should be allowed to consider whether race or national origin motivated Defendant's unfair treatment of Plaintiff.

B. PLAINTIFF CAN INTRODUCE ADDITIONAL EVIDENCE OF RETALIATION

Even if the Court decides that Plaintiff's claim of race and national origin discrimination should be dismissed due to a failure to exhaust administrative remedies, it is important to note that Plaintiff should be allowed to make allegations of retaliation at trial, even to the extent that such allegations were not specifically addressed in the EEOC proceedings.

The Second Circuit Court of Appeals explained the following:

> [W]e find reversible error in the district court's decision not to consider adverse employment acts that Jute did not specifically raise in the EEOC charge. '[L]oose pleading' is permitted before the EEOC. . . . Thus, '[w]e have recognized . . . that claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.' . . . Reasonably related conduct is that which 'would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.' A complaint of retaliation 'could reasonably be expected to inquire into other instances of alleged [retaliation] by the same actor.

Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 177-178 (2d. Cir. 2005).

In fact, even instances of retaliation which occurred prior to the EEOC proceedings, and which were not timely pursued before the EEOC, can still be introduced to the jury as relevant "background evidence." See id. at 176-177 ("[E]vidence of an earlier alleged retaliatory act may constitute relevant 'background evidence in support of [that] claim.' . . . Hence, relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act.").

In its memorandum, Defendant makes a point that Plaintiff has raised a number of recent acts of retaliation that were not specifically addressed in the EEOC proceedings. (See Memorandum of Law in Support of Defendant's Motion in Limine to Exclude Certain Evidence and for a Judicial Determination of Lost Wages with Respect to Plaintiff's Title VII Claims at 2-3.) The Court should take cognizance that Plaintiff should be able to fully present evidence of

retaliation to the jury, no matter the outcome of Defendant's exhaustion defense concerning race discrimination.

## II. DEFENDANT'S REQUEST TO EXCLUDE EVIDENCE OF GRAFFITI SHOULD BE DENIED

A reasonable jury could find that Defendant's failure to follow its policy of removing graffiti was discriminatory and retaliatory, or at least that it tends to prove a course of retaliatory conduct and intent.

### A. PRIMA FACIE CASE

A plaintiff establishes a *prima facie* case of discrimination by showing: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) that he was engaged in a protected activity; (2) that defendant knew of the activity; (3) that defendant took an adverse action against the plaintiff; and (4) that there is a causal connection between the adverse action and the protected activity, *i.e.*, that the defendant had a retaliatory motive. Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006); Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). His initial burden in establishing these elements is *de minimis*. See Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 467 (2d Cir.), cert. denied, 534 U.S. 993 (2001).

Defendant misreads the Second Circuit opinion in Fincher v. Depository Trust & Clearing Corp. to support its argument. 604 F.3d 712, 721 (2d Cir. 2010). The Fincher case makes clear that the mere failure to investigate a complaint is not retaliation for the same

complaint. See id. But that case makes equally clear that the failure to investigate a complaint can, indeed, be considered retaliation for a prior complaint. See id. at 722 ("We do not mean to suggest that failure to investigate a complaint cannot ever be considered an adverse employment action for purposes of a retaliation claim. It can be if the failure is in retaliation for some separate, protected act by the Plaintiff."). Plaintiff is not claiming that Defendant's failure to remove graffiti constituted retaliation for Plaintiff's complaint about the graffiti, but that it was retaliation for Plaintiff's prior protected activities. Therefore, the Fincher case strongly supports Plaintiff's position that evidence of the graffiti is admissible. See id.

Defendant's failure to remove graffiti was an affirmative departure from its ordinary policy, and it was a crude form of repayment for Plaintiff's EEO complaints. Defendant argues that Plaintiff "suffered no adverse action as a result of any alleged failure to remove graffiti," which is characteristic of the generally dismissive attitude taken by the management at the post office toward this litigation. It should suffice to say that it is a profound understatement to call the graffiti described in this case "adverse." Having to go to work every day and see graffiti calling one a "rat," or an "asshole," or accusing one of "suck[ing] all cock," would not be tolerable to reasonable people.

### B.  EVIDENCE OF INTENT TO RETALIATE

Even if a reasonable jury could not find that the graffiti, by itself, created a prima facie case of racial discrimination or retaliation, it is highly probative of the fact that Defendant *intended* to treat Chiang differently from other employees when viewed in conjunction with Defendant's other actions. See Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). See also Jute,

420 F.3d at 176-177. The central theme of Plaintiff's case is that he was generally treated as a second-class employee, particularly after filing EEO complaints, and the graffiti is an inescapable example of that treatment.

At the same time, Defendant can show no unfair prejudice from the introduction of evidence of Defendant's decision not to remove the graffiti. See Fed. R. Evid. 403. If Defendant sincerely believes that it followed its policy with respect to covering the graffiti concerning Plaintiff, Defendant is welcome to offer evidence to that effect at trial. However, Defendant can point to no authority to support its proposition that such evidence can be excluded *in limine*, as it is highly illustrative of Defendant's intent to treat Plaintiff differently.

### III. DEFENDANT'S REQUEST TO EXCLUDE EVIDENCE CONCERNING BACKPAY SHOULD BE DENIED

Plaintiff's claims of racial discrimination and retaliation are demonstrated primarily by Defendant's efforts to systematically provide fewer opportunities for overtime to Plaintiff than to the other drivers at Gracie Station. While it is true that Courts in this circuit have found that an award of backpay is for the Court to decide, it is a whole other matter to exclude evidence from trial. The jury, after all, must make the threshold determination with respect to liability, and will be unable to make that determination without being fully apprised of Defendant's continuous efforts to compensate Plaintiff less than his fellow drivers.

In Zerilli v. New York City Transit Authority, the United States District Court for the Eastern District of New York found that "backpay awards are expressly excluded from the ambit of 'compensatory damages,' which are to be tried to the jury, and that a backpay award under Title VII continues to be a matter for the Court to decide." 973 F. Supp. 311, 314 (E.D.N.Y. 1997) (citing 4 L. Sand, Modern Federal Jury Instructions ¶ 88.03 at 88-173 (1996 ed.)). Even if this Court determines that it is responsible for making the ultimate calculation for an award of

backpay, it does not follow that evidence of discriminatory overtime practices and lost wages should be excluded from trial. Such evidence is essential to proving the underlying basis of Defendant's liability, which is undoubtedly the province of the jury. See Gilbert v. Hotline Delivery, 2001 WL 799576 *2 (S.D.N.Y. 2001) ("Once a plaintiff has been deemed eligible for the remedy, *the method of assessing backpay* is also a matter for the court's discretion." (emphasis added)). See also EEOC v. Joint Apprenticeship Committee of the Joint Board of Electrical Industry, 1996 WL 509682 *5-6 (S.D.N.Y. Sept. 9, 1996).

Such evidence that Defendant unfairly deprived Plaintiff of opportunities to earn overtime compensation also bolsters Plaintiff's claim of emotional distress. Plaintiff seeks to demonstrate to the jury that his emotional distress was not only real, but also that it was a foreseeable consequence of the unfairness he endured due to Defendant's discriminatory actions. Without hearing the full breadth of Plaintiff's grievance, the jury might question whether his emotional and medical condition were overblown or truly caused by discrimination.

## IV. DEFENDANT'S REQUEST TO EXCLUDE EVIDENCE CONCERNING PLAINTIFF'S EMOTIONAL CONDITION SHOULD BE RESERVED FOR TRIAL

The anticipated testimony of lay witnesses touching on Plaintiff's emotional distress is clearly admissible. Any concern that such testimony might somehow extend beyond what is permissible under Rule 701 is speculative, and rulings on that issue should be reserved for trial.

In support of its motion, Defendant cites a case in which a Court found it proper to exclude a lay witness' unsubstantiated and inflammatory opinion that a party is "crazy." See Williams v. Muhammad's Holy Temple of Islam, Inc., No. 00 Civ. 1251 (RML), 2006 WL 297448 *2 (E.D.N.Y., Feb. 8, 2006). That case discusses Rule 701 of the Federal Rules of Evidence, which provides that if a witness is not testifying as an expert, the witness' testimony in

the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge. See id.; Fed. R. Evid. 701; Fed. R. Evid. 702. The Court in Williams simply held that "a lay witness's opinion that another person is 'crazy' does not meet these criteria." 2006 WL 297448, at 2.

Courts in this circuit have directly held that "[a]n award of compensatory damages may be based upon lay testimony alone." Miner v. City of Glens Falls, 999 F.2d 655, 662-63 (2d Cir.1993); Portee v. Hastava, 853 F.Supp. 597, 613 (E.D.N.Y. 1994), aff'd., 104 F.3d 349 (2d Cir. 1996). In the Zerilli case, discussed supra, the plaintiff testified at length about the effects on her physical and mental condition of her treatment by the defendant. 973 F. Supp. 311, 314, vacated on other grounds, 162 F.3d 1149 (2d. Cir. 1998). Ms. Zerilli's co-workers provided corroborative testimony. Id. The Court found that "the issue of compensatory damages was correctly submitted to the jury and that it rendered a reasonable award" of Ninety-Five Thousand Dollars ($95,000.00). See id.

Case law clearly protects Plaintiff's right to testify concerning his damages arising from emotion distress, as well as his right to offer testimony of other lay witnesses who have personally observed signs of Plaintiff's distress. Furthermore, Plaintiff's counsel is familiar with Rules 701 and 702, and has no intention of eliciting testimony disallowed by those Rules, which makes a ruling in advance of trial unnecessary.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that Defendant's motion be denied.

Dated: New York, New York
July 16, 2010

                                      Yours, etc.,

                                      Wong, Wong & Associates, P.C.

                                      By: _____
                                          Jonathan T. Trexler
                                          *Attorneys for Plaintiff*
                                          150 Broadway, Suite 1588
                                          New York, NY 10038
                                          (212) 566-8080

To:    David Bober
       Jeffrey S. Oestericher
       Assistant United States Attorneys
       86 Chambers Street, 3rd Floor
       New York, NY 10007